# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. _____ |
| v. | ) |
| | ) |
| Zeal IT Solutions Pvt Ltd., a corporation, and | ) **DECLARATION OF COUNSEL IN** |
| | ) **SUPPORT OF MOTION TO** |
| Kishore Ghosh, individually and as an officer of Zeal IT Solutions Pvt Ltd., | ) **TEMPORARILY SEAL FILE** |
| | ) |
| Defendants. | ) |

_____

I, Benjamin R. Davidson, declare as follows:

1. I am counsel of record representing Plaintiff, Federal Trade Commission ("FTC" or "Commission") in this action against Defendants.  My business address is 600 Pennsylvania Ave., N.W., Washington, DC 20580.

2. The FTC has filed an Ex Parte Motion for Order Temporarily Sealing File, which will include the FTC's Complaint, the FTC's Motion for an *Ex Parte* Temporary Restraining Order with Asset Freeze, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO"), and supporting Memoranda and Exhibits.  The FTC seeks to keep the file under seal until October 2, 2012 at 5:00 p.m., so that so that the FTC may have its TRO heard and also have an opportunity to serve Defendants and their financial institutions with a copy of the TRO, should it be granted.

3. The evidence set forth in Plaintiff's Complaint, Motion for an *Ex Parte* Temporary Restraining Order, the supporting Memorandum, and the accompanying exhibits show

that Defendants have engaged in an unlawful deceptive telemarketing scheme that has ensnared consumers all over the world.  The evidence shows that Defendants misrepresent: (1) that they are affiliated with a legitimate computer company; and (2) that they have detected security or performance issues on consumers' computers, including viruses, spyware, or system errors.  Defendants make these representations in order to scare consumers into purchasing unnecessary computer repair services.

4. The FTC contends that Defendants' behavior violates Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also contends that Defendants' behavior violates the Telemarketing Sales Rule, 16 C.F.R. §310.

5. The FTC has not given the Defendants notice of this lawsuit or of the FTC's preceding investigation because immediate and irreparable injury, loss, or damage will result if Defendants receive notice of this action.  To the best of the FTC's knowledge, Defendants are not aware that the FTC has uncovered evidence of their scheme or that the FTC is seeking redress from them.  Defendants' deceptive actions, their foreign operations, and the ease of transferring assets, support the likelihood that Defendants would destroy or conceal documents or dissipate assets if they were to receive advance notice of the FTC's *Ex Parte* Motion for a TRO.

6. More specifically, the evidence reveals that Defendants go to great lengths to hide their identities. For example, Defendants do business using several different and interchangeable websites.  Defendants also call consumers from several different phone numbers with United States area codes despite the fact the calls are being made from India.

7.  Defendants also use bank accounts located in countries with which they have no connection.  For example, Defendants use a German bank to process transactions with United States consumers despite the fact that Defendants operate out of India.

8.  The FTC has, in the past, attempted to obtain injunctive relief against defendants who, when given notice and the opportunity to be heard, attempted to destroy documents, fled the jurisdiction of the court, or transferred assets.

9.  As illustrated by the following examples, provided on information and belief, it has been the FTC's experience that FTC defendants who are engaged in unfair and deceptive schemes, and who receive notice of a motion for a TRO prior to service on third parties, or the FTC's plans to file an action alleging consumer fraud, frequently attempt to undermine the FTC's efforts to preserve the status quo by dissipating, transferring, and concealing assets, and hiding and destroying documents:

    a.  In *FTC v. Transcontinental Warranty, Inc.*, No. 09-2927 (N.D. Ill. 2009), the FTC moved for a temporary restraining order with notice to the defendants.  The Court granted the FTC's motion for a temporary restraining order freezing the defendants' assets and appointing a receiver.  However, when the receiver and counsel for the FTC arrived at the corporate defendant's premises pursuant to the court's order, hundreds of folders with labels indicating that they contained records of defendants' most recent transactions were found empty.  In addition, five computers, including that of the corporate defendant's CFO, were allegedly stolen the night before the receiver and counsel for the FTC arrived at the premises, and various third-party trade debtors of the corporate defendant froze payments due to the corporate defendant, which resulted in extensive litigation

over these assets and ultimately cost the receivership estate tens of thousands of dollars.

b. In *FTC v. Physicians Healthcare Development, Inc.*, No. 02-02936 (C.D. Cal. 2002), defendants were given short notice of a temporary restraining order hearing.  By the time of the hearing, however, defendants had removed all business records and computer equipment from the business premises, none of which were ever recovered.

c. In *FTC v. Thomas E. O'Day*, No. 94-1108-CIV-ORL-22 (M.D. Fla. 1994), the district court denied the FTC's request to issue a temporary restraining order with asset freeze without notice, and scheduled a noticed hearing on the relief sought. Several days later, the Federal Bureau of Investigation executed a search warrant on defendants' business premises as the FTC served notice of its action and the upcoming hearing.  Within hours, an individual defendant withdrew approximately $200,000 from one of his bank accounts.

d. In *FTC v. Renaissance Fine Arts, Ltd.*, No. 1:94CV0157 (N.D. Ohio 1994), the FTC filed a case alleging the misrepresentation of works of art without seeking an *ex parte* temporary restraining order with asset freeze.  Shortly after the action began, the defendant liquidated his business and fled the country.  The FTC then sought a temporary restraining order with an asset freeze, but it was too late. Although the FTC ultimately obtained a substantial monetary judgment, it could not be collected.

e. In *FTC v. Academic Guidance Services*, No. 92-3001 (AET) (D.N.J. 1992), defendants discovered that the FTC intended to file a case against them (and seek

an *ex parte* temporary restraining order) the following week.  An informant told the FTC that the defendants then leased a document shredder and spent the weekend destroying documents, which was confirmed by one of the defendants' employees.

   f.  In *FTC v. Applied Telemedia Engineering and Management, Inc.*, No. 91-635 (S.D. Fla. 1991), the defendants were advised, pursuant to an agreement with the FTC, that the FTC had filed its complaint and intended to seek a temporary restraining order with an asset freeze from the court.  When the FTC's agents went to the defendants' offices to serve process, they observed the defendants removing boxes of documents from the premises.  The FTC moved for, and received, an *ex parte* temporary restraining order the following day.

10. The following examples, also provided on information and belief, have been identified within the FTC as incidents illustrating the Commission's experience that temporary restraining orders with asset freezes, including *ex parte* temporary restraining orders, are effective to help prevent dissipation or concealment of assets:

   a.  In *FTC v. American Entertainment Distributors, Inc.*, No.  04-22431 (S.D. Fla. 2004), the court entered an asset freeze that froze assets of ten corporate and individual defendants.  Within hours of receiving notice of the asset freeze, one of the individual defendants withdrew $39,500 from his bank.  Because the asset freeze had been in place, the FTC was able to compel the individual defendant to return the money.

   b.  In *FTC v. Assail Inc.*, No. 03-007 (W.D. Tex. 2003), the court issued an *ex parte* temporary restraining order, including an asset freeze.  The lead defendant

nonetheless caused $200,000 to be transferred within hours of being served with the temporary restraining order, which, after contempt proceedings and a lengthy appeal, the defendant was required to repay.

c.   In *FTC v. The Tungsten Group,* No. 01-773 (E.D. Va. filed and *ex parte* temporary restraining order granted on Oct. 18, 2001), the FTC obtained an *ex parte* temporary restraining order with an asset freeze in a case involving fraudulent advance-fee loans.  The asset freeze frustrated one defendant's later attempt to withdraw funds from a frozen account.  Another defendant was persuaded by counsel to return money he had wrongfully wired out of an account covered by the temporary restraining order before his bank could freeze the account.

d.   In *FTC v. Productive Marketing*, No. 00-06502-NM-BQR (C.D. Cal. filed and *ex parte* temporary restraining order granted on June 19, 2000), the defendant's attempt to withdraw money from their bank was stopped by the temporary restraining order.

e.   In *FTC v. Inetintl Com, Inc.*, CV-98-2140-CAS-CW (C.D. Cal. filed April 1998), a defendant who had been served with the temporary restraining order nevertheless tried to withdraw money from his bank account, but was unsuccessful because the temporary restraining order had been served on the bank.

f.   In *FTC v. Equifin International*, CV-97-4526 DT (C.D. Cal. filed and *ex parte* temporary restraining order granted on June 20, 1997), a receiver was able, based on an *ex parte* temporary restraining order, to obtain return of monies from an

individual defendant who had withdrawn funds from an account containing the corporate defendants' credit card revenues after the temporary restraining order had been served on the corporate defendants.

g.  In *FTC v. Intellicom*, CV-97-4572 TJH (Mex) (C.D. Cal. filed June 23, 1997), because an *ex parte* temporary restraining order had been served on banks holding defendants' accounts, one of the banks refused to honor a defendant's request to wire out approximately $100,000.

h.  In *FTC v. United Consumer Services*, No. 94-CV-3164-CAM (N.D. GA filed Nov. 30, 1994; temporary restraining order granted early December), a defendant who withdrew $100,000 from a corporate account in violation of a temporary restraining order later produced the money in response to the FTC's contempt action based on that violation.

11. As noted above, the risk that Defendants will conceal or dissipate assets or destroy or conceal evidence if given notice of a temporary restraining order is high. Accordingly, the FTC respectfully requests that this Court enter the attached order placing this case under seal until 5:00 p.m. October 2, 2012, so that so that the FTC may have its Motion for a TRO heard and also have an opportunity to serve Defendants and their financial institutions with a copy of the TRO, should it be granted.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on September 24, 2012

       /s/ Benjamin R. Davidson
      Benjamin R. Davidson, DC Bar #975509
      Federal Trade Commission
      600 Pennsylvania Ave. NW
      Washington, DC 20580
      (202) 326-3055; bdavidson@ftc.gov

      Attorney for Plaintiff
      FEDERAL TRADE COMMISSION